FINNEGAN et al. v. BURROWS. (Supreme Court, Appellate Division, Fourth Department. February 6, 1898.) Appeal from Steuben county court. Appeal by Stephen Burrows from a judgment affirming a judgment of a justice's court in a special proceeding instituted under title 2, c 17, of the Code of Civil Procedure, by Catharine Finnegan and others, before Wells E. Ellis, a justice of the peace of the county of Steuben, against Stephen Burrows, the appellant, for forcible entry upon and detainer of about 27 acres of land, situate in the town of Hornellsville, in that county. The petition of the respondents alleged title to the premises in them, and that they were in peaceable occupation of the same when the appellant made forcible entry upon them, and expelled the respondents therefrom, and unlawfully withholds the same from the respondents. The appellant made a verified answer, denying the petition, and alleged in his defense "that, for three years together next before the alleged forcible entry and detainer, he had been in quiet possession of the premises (describing them), and the same is surrounded by a permanent fence, and that he is the owner of the same, and that his interests therein are not ended or determined, and that he or his ancestors, whose interests he claims, have been in the quiet and peaceable possession of the said described (premises) for more than twenty years last past, occupying, cropping, and cultivating the same." A trial was had before the magistrate who gave judgment awarding the immediate possession of the premises to the respondents with costs. Judgments of the county court and of the justice affirmed. Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ. Wesley Brown, for appellant. John Griffin, for respondents.

PER CURIAM. Judgment affirmed.

WARD, J. (dissenting). The respondents, Catharine Finnegan and her children, for many years prior to the 25th of June, 1895, resided in Buffalo, N. Y. At that time she and two sons, aged 19 and 17, respectively, appeared upon the disputed premises, which consisted of four lots, inclosed by fences; and abstracts from the testimony of this lady and her two sons (they being the only witnesses who testified in their behalf upon the trial before the magistrate) it is necessary to give, in order to show the assumed peaceable possession which they claim to have taken of the premises, and from which they were forcibly expelled by the appellant. Catharine testified: "After the 23d day of June, I came from Buffalo; went up on this farm. On the morning of the 25th of

June, 1895, Stephen Burrows was not on the farm at the time. He came along with some stock. My sons Michael Burrows and Joseph Finnegan were with me. I told him (appellant) I wanted he should stay off, keep his stock off. I also told him, if he had anything on the place, I would see he got it, sent it to him, or hand it to him. He said he would not stay off this place. My son and self posted notices forbidding him to come on the place. He said he would not stay off the place until the law compelled him to. * * * I stood in the road at the east. I was on the 2 lots. I stayed there for a while; left the boys. Two or three days after that, I was in the same lot. I tried to stop him. I told him I did not want him to come on the lot. He took the rails from us. Threw the fence down. We made a desperate to keep him back. He turned his horses on us. We had to get out of the way, or get trampled down. He and his man threw the fence down. He jerked the rails from me, and went through the fence. He took hold of the same rail, and jerked it from me. He turned the horse towards me, and would have run the horse over me if I had not got out of the way. He called me an old devil, and swore, saying that he would run over me or put the horse over us. He drove the horses on the premises out into the road. The horses got away. I did not meet him any more after that. I bought nails, borrowed a hammer, and nailed up the gate. They were torn down each time. I posted notices." On her cross-examination she testified: "I came down June 25, 1895. I went there, and posted notices on the farm. * * * I nailed up the gate. I was there on several different days. I went there the next day, and walked about. I could not say that I saw defendant that day to speak to him. I think we laid the fences down on that day; let the cows out. We tore down some fence, and laid up other fences. We tore down more than one fence; fixed it. He was there when we tore down some fence. He ordered us off the premises. He and his man laid up some fence, and I tore it down again. He went on the premises with his team. I saw him hoe potatoes. He opened the gate, and went through to the other lot. I ordered him off the premises. He ordered me off the premises. He told me he would not go off until he was put off by law. I was there on Friday of that week for the last time. That was the day he had been plowing in my fields. I did not strike him. I stayed, perhaps, an hour or so. We went down to Pat Mason's. Burrows had gone home. I don't think I went back. Think I went to Caneseraga from there to my home. I have not been there since. There was grain on said premises. There were oats, barley, wheat, or rye, some potatoes, part grass pasture. Defendant cut grass on premises. He lived over on land right across the road. There was a man on the piece. [These references to he, him, etc., refer to the appellant.]" Michael Burrows testified: "Mother told Stephen [the appellant] she had come to take possession of the place, and, if he had anything on the place, she would send it to him. She told him he would have to stay off the place. He said he would not stay off; she would have to go to law to make him stay off. There were no cat-

tle on these four lots, and no one at work there at the time. The first day he crossed there I did not see him. The next day he came there I was alone. I forbid his coming on. The next morning I was there. I forbid him to come on. Had stones and rails against the gate. He threw the stones and rails away, jerked the gate away from me. He said, 'I ought to give you a damn good kick.'" The witness then proceeds to give the details of the conflict over the possession, as stated by the mother, and on his cross-examination he testified that he saw the appellant cutting grass upon the premises. Joseph Finnegan testified about the nailing of the gates by his party, and the opening of them by the appellant, and testified that the appellant was hoeing potatoes in one of the fields, and on another day he was plowing and his hired man was hoeing potatoes in the field, and stated the conflicts between the parties as to the possession as the other witnesses had done. The testimony of the appellant and of several disinterested witnesses before the magistrate established beyond controversy that for five years before the assumed forcible entry and detainer, and up to and including the time when the respondents sought to enter upon the premises and occupy them, the appellant had been, and was, in the absolute and exclusive possession and control of the premises in dispute, cultivating, pasturing, plowing, and exercising other rights of ownership over the same; that these premises were a part of a farm that he had cultivated and controlled, his residence being across the highway from the premises in dispute. The appellant and his employé were actually hoeing potatoes on these disputed premises, and pasturing other portions with his stock, and this was the situation on the 25th of June, 1895, when the mother and her two sons made their descent upon the premises, as appears from their testimony. So that we have here the bald case of a man in the peaceable possession of his farm, occupied by his stock and crops, and claimants come along and proceed to take violent, if not riotous, possession of a portion of his farm; and because he resists them, and maintains his possession, proceedings are taken against him as a disturber of the peace, and he is charged with and convicted of forcible entry and detainer, which is a criminal act, and the possession of his property turned over in this summary way to the trespassers.

Had the position of the parties been reversed before the magistrate, and the appellant had charged the respondents with forcible entry and detainer while they were trying to exclude him from the property, the proceeding might well have been maintained of forcible entry and detainer. On the trial the respondents sought to show title to the premises in themselves by the introduction of a land contract and a deed that were excluded by the magistrate, and properly so, because in such a proceeding the courts have held that the burden was not cast upon the magistrate of examining and determining conflicting titles to real estate. People v. Leonard, 11 Johns. 504; Carter v. Newbold, 7 How. Prac. 166. "No one has the right to assert his own title with force and violence against another in peaceable possession, under color of title and claim of right." Rex v. Wil-

son, 8 Term R. 357–361. In Porter v. People, 7 How. Prac. 441, Judge Johnson, speaking for the general term of the Seventh district, in a case of this character, says: "The question to be tried is the possession and the forcible character of obtaining or holding it; not the question whether the party in actual, peaceable possession, and forcibly expelled, had the right of possession. The very object of the statute was to secure and restore to persons forcibly ejected the peaceable possession until the right should be determined by due course and process of law, and to punish the entry upon such possession with the strong hand, and without legal process." And it is well said in Alexander v. Griswold (Com. Pl.) 17 N. Y. Supp. 523: "A forcible entry and detainer is a violent taking and keeping possession by one of any lands and tenements occupied by another by means of threats, force, or arms, and without authority of law. It is essentially a proceeding to protect the actual possession of real estate against unlawful and forcible invasion, to remove occasion for actual violence in defending such possession, and to punish breaches of the peace committed in the entry upon or the detainer of real property. 8 Am. & Eng. Enc. Law, 102, and cases there cited. The only questions to be decided are whether or not the plaintiff was lawfully or peaceably in possession of the premises sought to be recovered, and whether or not the respondents unlawfully entered or forcibly detained the same. Neither the right of entry nor the right of possession is involved in the issue," citing many cases. It was not claimed that the respondents had ever been in possession, in fact, of the disputed premises. The deed and contract were not therefore available to show actual possession, and that was the matter in dispute.

The respondents' claim, that their acts, as detailed by their evidence, in seeking possession of the premises as against the constant efforts of the appellant to maintain his possession, constituted a peaceable possession, which enabled them to treat the appellant as guilty of a forcible entry and detainer under the circumstances of the case, is absurd. The provisions of the Code of Civil Procedure upon the subject are but a repetition of the common law and the Revised Statutes upon the subject. Section 2245 of the Code provides: "Where the application is founded upon an allegation of forcible entry or forcible holding out, the petitioner must allege and prove that he was peaceably in actual possession of the property, at the time of a forcible entry, or in constructive possession, at the time of a forcible holding out; and the adverse party must either deny the forcible entry, or the forcible holding out, or allege, in his defense, that he, or his ancestor, or those whose interests he claims, had been in quiet possession of the property, for three years, together next before the alleged forcible entry or detainer; and that his interest is not ended or determined; at the time of the trial." Section 2233 of the Code provides: "An entry shall not be made into real property, but in a case where entry is given by law; and, in such a case, only in a peaceable manner, not with strong hand, nor with multitude of people. A person who makes a forcible entry forbidden by this section, or

who, having peaceably entered upon real property, holds the possession thereof by force, and his assigns, under-tenants, and legal representatives, may be removed therefrom; as prescribed in this title." The respondents' counsel and the county judge, in affirming the judgment of the magistrate, relied upon Cain v. Flood (Com. Pl.) 14 N. Y. Supp. 776. In that case the plaintiff claimed the right to occupy certain apartments in a building, a portion of which was in his possession, and obtained access to these apartments in the absence of the defendant, but without noise or disturbance or objection; the means of access being by procuring a key, and unlocking the door of the apartments. The defendant returned, and resumed forcible possession, and in a violent manner, which it was held that the defendant was not authorized to do. This statement shows the essential difference between that case and the one at bar. Here the respondents never obtained possession peaceably. The appellant was in possession all of the time of the land in controversy. The spasmodic and violent attempts of the respondents to take possession, which they abandoned upon being frustrated by the appellant in maintaining his possession, does not constitute peaceable possession, such as was taken in the case last cited. But the Cain Case is only authority for the peculiar condition to which it refers; for it was decided long ago, and has never been questioned since, that "if possession is obtained surreptitiously, and maintained by force, the entry will be regarded as forcible." Wood, Landl. & Ten. 974, citing Burt v. State, Tread. Const. 489; Botts v. Armstrong, 8 Port. (Ala.) 57. The respondents have mistaken their remedy. They should have commenced the more deliberate proceeding of ejectment in a court where the rights of the parties could be properly tried, and not have attempted, in this violent and tortious manner, to obtain the control of the property in controversy. Such proceedings should not be encouraged, but condemned. The judgment of the county court and of the justice should be reversed, with costs.